**WILLIAMS BIT & TOOL COMPANY et al., Appellants,**

v.

**CHRISTENSEN DIAMOND PRODUCTS COMPANY, Appellee.**

**No. 24772.**

United States Court of Appeals
Fifth Circuit.

Aug. 19, 1968.

Rehearing Denied Sept. 12, 1968.

---

Olin P. McWhirter, Greenville, Tex., Kelley Smith, Tyler, Tex., Louis T. Pirkey, Tom Arnold, Houston, Tex., for appellants.

Oscar A. Mellin, Carlisle M. Moore, San Francisco, Cal., Tom B. Ramey, Jr., Tyler, Tex., Bernard Kriegel, Los Angeles, Cal., for appellee.

Before MARIS,* THORNBERRY and AINSWORTH, Circuit Judges.

MARIS, Circuit Judge:

The plaintiff Williams Bit & Tool Company, licensed exclusively to manufacture a diamond drill bit patented under United States Letters Patent No. 2,953,354, and the plaintiffs Edward B. Williams III, Joseph W. Williams and David B. Williams, owners of the patent by assignment from the inventor Edward B. Williams Jr., appeal from a judgment entered in the District Court for the Eastern District of Texas holding that claim 5 of the patent, while valid, was not infringed by the diamond drill bits manufactured and sold by the defendant Christensen Diamond Products Company. The plaintiffs contend that the district court erred in holding that file wrapper estoppel bars them from claiming that the defendant's bits infringe their patent.

The complaint charged that the defendant deliberately and wilfully copied the plaintiff's patented invention, infringing claim 5 of the patent, and it sought a judgment declaring claim 5 valid and infringed by the defendant and restraining the defendant from further infringement and from inducing others to infringe. The complaint also prayed for an accounting of defendant's profits from the sale of the accused bits and for an award of costs, treble damages and attorney's fees. The defendant answered, raising the defense of noninfringement and also the defense of noninvention in view of the prior art, anticipation by prior publication and use, and file wrapper estoppel. The defendant also asserted that the plaintiff was estopped to maintain the suit by virtue of a disclaimer by the inventor. The defendant prayed that the complaint be dismissed; that claim 5 of the patent be adjudged invalid and not infringed, and that reasonable attorney's fees and costs be awarded it.

After a trial in the district court, the court filed findings of fact and conclusions of law. The court found that the patent in suit relates to a diamond drill intended to drill a hole larger than the major diameter of the drill bit. The bit has a geometrical form such that it can be lowered through a bore hole having a diameter less than the diameter of the hole it can drill. The bit comprises a full round bit from which an arcuate portion of the vertical gauge has been removed from substantially more than half of the periphery of the bit to leave a plain face curving around the bit opposite to the remaining vertical gauge portion. The bit is not provided with any vertical gauge surface on the side of the bit opposite to the unremoved gauge portion or "curved drilling face". It is provided with watercourses in the end drilling face to cool the cutting elements and to remove the cuttings and debris from under the cutting face and upwardly through the bore hole. The bit is intended to operate on the principle of an eccentric axis of rotation, that is, the "curved drilling face" is intended to rotate about an axis which does not run through the geometric center of the body of the bit structure, and thus will circumscribe a radius which is greater than the major radius of the bit. The removed gauge portion is intended progressively to uncover an arcuate portion of the bottom of the hole incidental to the rotation of the bit, thus providing for an unrestricted flow or a discharge of the drilling fluid from under the drill bit into said arcuate space or uncovered portion of the bore hole and thence upward through the bore hole to the surface.

---

* Of the Third Circuit, sitting by designation.

The defendant had denied the validity of claim 5 and sought, in the district court, to prove that the subject matter of the claim had long been published, known and used in the prior art and that it would have been obvious to a person having ordinary skill in the art at the time the invention was made.

The district court considered the scope of the drilling-bit art prior to 1957, the date of the Williams invention, and found that the use of diamonds as cutting elements was well known; that the use of drill bits operating on the eccentric principle to drill a hole larger than the major diameter of the bit was well known, and that the use of a drilling fluid flowing through watercourses or grooves in the drilling faces to cool the drilling elements and remove the cuttings was well known. With respect to the patent in issue, the district court made the following findings of fact:

"Prior to the invention of the patent in suit, no one had devised an efficient diamond-type bit that could drill a hole larger than the major diameter of the bit. The Plaintiffs were the first to make a drilling bit which combined in one structure the eccentric rotation principle with diamond cutting elements and a watercourse design which permitted freedom of flow of the drilling fluid from under the drill bit into an uncovered portion of the bore hole, which was operable by modern drilling standards and commercially successful.

"A large number of problems or difficulties have been recognized to exist in the diamond drill bit art to which the patented structure described in the preceding paragraph * * * effects a solution to at least some extent. These problems include:

"(a) The patented structure will start drilling in hard formations a new hole of a larger diameter than the hole in which it commenced drilling.

"(b) The patented bit affords greatly enlarged clearances between the wall of the bore hole and the bit, thus significantly reducing the 'sticking' problem as the bit is being run into and out of the hole.

"(c) There is less damage to the cutting elements of the patented bits than in prior art bits when running the bits into and out of the hole.

"(d) The patented bit materially reduces the 'swabbing' effect created by the clearance between the bore hole wall and the bit when running in and out of the hole, therefore allowing for an increase in the trip time of running bits in and out of the hole, and, in addition, reducing the chance of caving certain types of formations.

"(e) The patented bit permits less vertical load to be placed on the drill string during a drilling operation, thereby aiding the operator in drilling a straight hole.

"By solving each of the named problems at least to some substantial degree, the patented bit is thereby fulfilling needs of long standing in the drilling industry.

"The patented bit had gained and enjoyed substantial commercial success by 1961.

"While the teachings of the prior art may be close to the invention disclosed in the patent in suit, such a combination as disclosed by the patent is novel to the art, and its significance had been overlooked by those skilled in the art for many years. The invention disclosed by the patent in suit is novel, useful, and the combination disclosed was not obvious to one with ordinary skill in the art."

It will thus be seen that the district court, while recognizing the fact that plaintiffs' device was a combination of prior teachings, found that the combination disclosed by the patent was a new and useful improvement, not obvious to one with ordinary skill in the art. While it is true that the mere assembly

of old parts or elements which perform or produce no new or different function or operation than that theretofore performed or produced by them does not constitute patentable invention, Great A. & P. Tea Co. v. Supermarket Equip. Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, it is well settled that a combination is patentable, though each of its constituent elements was well known in the prior art, if the combination produces a new and useful result and would not have been obvious at the time of the invention to a person having ordinary skill in the art. 35 U.S.C. §§ 101, 102, 103; New York Scaffolding Co. v. Whitney, 8 Cir. 1915, 224 F. 452, 462; Robertson Rock Bit Co. v. Hughes Tool Co., 5 Cir. 1949, 176 F.2d 783, 790. Our examination of the record and exhibits satisfies us that there is ample support for the conclusion of the district court that the invention disclosed by the patent in suit is novel and useful, and that the combination disclosed was not obvious to one with ordinary skill in the art. We accordingly find no error in the district court's determination that claim 5 of the patent in suit is valid.

The defendant urges that even though claim 5 is valid, the plaintiffs are estopped, by reason of action taken and arguments made on behalf of the patent applicant by his attorney during the prosecution of the application in the Patent Office, from maintaining that the claim is broad enough to cover the defendant's accused bit as an infringing device. The defendant thus sets up so-called file wrapper estoppel as a defense to the charge of infringement.

The proceedings in the Patent Office, Serial No. 735,452, which were before the district court and which we have reviewed, show that the nine claims originally presented were all rejected as being anticipated by the prior art and unpatentable over patents issued to Chapman No. 443,072; Stokes No. 2,425,132; Zublin No. 2,614,809 and Feucht No. 2,802,642. The nine claims were then amended by the applicant but again all were rejected by the Patent Office, reference being made to additional patents, Young No. 1,256,968; Akins No. 1,463,566 and Zublin No. 1,578,266. In the original application and the first amendment thereto the main theme of the applicant's presentation was that he had provided a device consisting of "a drill bit of the diamond type which may be lowered through a bore hole and operated to deepen and/or enlarge the bore hole." The claims of the application as originally filed and first amended made generally the following reference to the hydraulic function:

"* * * said body member having a port * * * opening through the end drilling face * * * for supplying drilling fluid to the drill bit, and watercourses extending from said port across the drilling faces to distribute drilling fluid for cooling the cutting elements and washing cuttings from the drilling faces of the drill bit."

After the second rejection by the Patent Office the application was amended by the appellant to add to the specification the language now appearing in Column 3, lines 15 through 38, which is set out in a footnote.[1] At the same time

1. "It is obvious that the side drilling face 9 curves on the common radius about the axis of rotation 6 and terminates at sides thereof in a chordal plane offset from the axis 6 on the side of the curved drilling face 9 and that the body portion of the bit has a plain opposite face 12 curving about the axis 6 on a shorter radius and which joins with the sides 13 and 14 of the curved drilling face to cooperate with the wall of the bore hole in leaving an arcuate space coextensive with said plain face and whereby a bottom portion of the bore hole is progressively uncovered across said plain face from one side of the curved drilling face to the other incidental to rotation of the bit. It is also obvious that the arcuate space and said uncovered bottom portion of the bore hole provide a common uninterrupted discharge for the cuttings from all of the generally radial recesses on the side of the chordal plane opposite the curved drilling face, and that the supply of drilling fluid from the

the applicant withdrew all the original claims and substituted therefor a new set of claims, new claim 5 being the one here in issue. Its text is set out in a footnote.[2] The principal language which was introduced into new claim 5 to distinguish it from the prior art patents cited by the Patent Office was the following:

"* * * said end drilling face having watercourses leading to said arcuate space at said uncovered bottom portion of the bore hole for discharge upwardly through said arcuate space, and said body portion of the drill bit having a downflow passageway opening through said end drilling face for supplying drilling fluid to said watercourses for washing the cuttings from said cutting elements in the end drilling face and carrying the cuttings upwardly of the drill bit under a high volume flow through said arcuate space by freedom of the flow from under the drill bit into said space."

■ It is settled that when the holder of a patent has voluntarily amended a claim by the inclusion of narrowing language in order to avoid prior art cited by the Patent Office and thus obtain the issuance of the patent, he is estopped from asserting that the amended claim

covers what has been eliminated by the amending language. Graham v. John Deere Co. of Kansas City, 1966, 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545.

The defendant argues, and the district court held, that this is what the plaintiffs are seeking to assert in this case. The defendant argues that its accused bit is not the bit of the patent and it is, indeed, clear that it does not follow precisely the structure described in the patent specification and drawings as the preferred embodiment. On the contrary it is conceded, as the district court found, that the defendant's accused bit, which is described as a step-faced model, is substantially the same as a modified bit manufactured and sold by the plaintiffs after the issuance of the patent but before the defendant's bit was placed on the market. Those bits comprise a combination in one piece of a full rounded portion having a vertical gauge surface fitted with cutting elements around its entire circumference and immediately above it an offset reamer portion, the cutting elements of which extend only for about 140° of the circumference of the bit. In operation, the full round lower portion of the bit drills a pilot hole and the reamer portion reams the pilot hole to the full gauge diameter of the bit. The reamed out portion of the

downflow passageway or port 28 supplies drilling fluid to all of the recesses for washing the cuttings from said recesses and carrying the cuttings upwardly of the drill bit under the high volume flow through the arcuate space by the freedom of the flow from under the drill bit and into the arcuate space."

2. "5. A rotary drill bit having a body portion provided with a drilling face curving on a common radius about an axis of rotation and terminating at sides thereof in a chordal plane offset from said axis of rotation on the side of said curved drilling face, cutting elements carried in said curved drilling face for maintaining gauge of a bore hole having the radius of said curved drilling fae when the bit is in use, said body portion having a plain opposite face curving about the axis of rotation on a shorter radius and joining with said sides of the curved drilling face to cooperate with the wall of the

bore hole in leaving an arcuate space coextensive with said plain face and whereby a bottom portion of the bore hole is progressively uncovered across said plain face from one side of the curved drilling face to the other incidental to rotation of said bit, said body portion having an end drilling face, cutting elements in said end drilling face, said end drilling face having watercourses leading to said arcuate space at said uncovered bottom portion of the bore hole for discharge upwardly through said arcuate space, and said body portion of the drill bit having a downflow passageway opening through said end drilling face for supplying drilling fluid to said watercourses for washing the cuttings from said cutting elements in the end drilling face and carrying the cuttings upwardly of the drill bit under a high volume flow through said arcuate space by freedom of the flow from under the drill bit into said space."

hole has an arcuate space opposite to the reamer portion of the bit which, as the bit rotates, progressively uncovers an annular portion of the bottom of the bore hole.

■■ The defendant argues that the step-faced bit just described does not infringe because it has a substantially different construction and operates in a substantially different way as compared to the bit of the patent. The district court so concluded, although holding that the step-faced bit falls within the literal words of claim 5. In so holding it relied upon an argument made in the Patent Office by the attorney for the applicant in support of the finally amended claims. In so doing, the district court erred. For it is the language of the claim, as amended to meet the Patent Office's objections, and not the argument of the applicant's patent attorney in support of it, which is controlling as to the existence of an estoppel. Catalin Corporation of America v. Catalazuli Mfg. Co., 2 Cir. 1935, 79 F.2d 593, 594; Denominational Envelope Co. v. Duplex Envelope Co., 4 Cir. 1935, 80 F. 2d 186, 192–193. The purpose of such an amendment of the specification and claims is to limit and define the scope of the invention in the light of the prior art cited by the Patent Office against it and when the amendatory language is accepted by the Patent Office and a patent is issued in the amended form the language of the specification and claims, as thus modified and approved by the Patent Office, defines the invention and constitutes the grant and the patentees are not estopped by the proceedings in the Patent Office from so contending.

■ Here the district court found, and we agree, that the defendant's accused step-faced bit falls within the literal words of claim 5 of the patent in suit. This should have ended the inquiry so far as concerns the alleged estoppel since, as we have pointed out, it is the language of the specification and claims which the Patent Office has approved which defines and limits the invention. It was therefore, error for the court to deny to the plaintiffs the literal scope of their claim 5 and to hold, on the basis of an attorney's argument in the Patent Office, that the claim must be limited beyond what its language requires. In Graver Tank & Mfg. Co. v. Linde Air Prod. Co., 1950, 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097, the Supreme Court said, "In determining whether an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim. If accused matter falls clearly within the claim, infringement is made out and that is the end of it." It is true that in the *Graver Tank Co.* case the Supreme Court recognized, as it had done in Westinghouse v. Boyden Power Brake Co., 1898, 170 U.S. 537, 568, 18 S.Ct. 707, 42 L.Ed. 1136, that the doctrine of equivalents which is ordinarily available to a patentee may not be applicable in the case of an accused device which, although within the language of the claim, has so far departed from the principle of the patent and performs its function in so different a way as not to represent the invention. The district court applied this exception in the present case, we think wrongly. The district court's theory was that the accused step-faced bit departs from the principle of the invention in that the watercourses in the end drilling face of the pilot bit do not empty directly into the arcuate space opposite the reamer. But we do not read claim 5 as requiring that the watercourses in the end drilling face empty *directly* into the arcuate space. Its language is: "* * *, said end drilling face having watercourses leading to said arcuate space at said uncovered bottom portion of the bore hole for discharge upwardly through said arcuate space, * * *" The defendant's accused step-faced bit clearly has such watercourses leading to the arcuate space at a bottom portion of the bore hole, namely, that annular portion of the bottom of the hole which lies under the offset reamer portion of the bit as it rotates. This, we think, fully satisfies the

language of claim 5 and does not depart from the principle of the patent.

 The district court also held that the defendant's bit departs from the principle of the patent in that the vertical gauge surface of the pilot portion provides a positive bearing surface to oppose the lateral thrust of the reamer so as to stabilize the bit and drill a straight hole. However, the preferred exemplar described in the specification of the patent provides such stabilization upon an internal conical core of rock in the bottom of the hole which forms under the central concave portion of the bit as it rotates. The defendant's accused bit does the same, merely adding the pilot portion as an additional safeguard for stabilization. This may well be an improvement but it is not a departure from the patent principle. Likewise we regard the other features of the accused bit to which the district court refers, namely, the controlled flow of drilling fluid and the absorption of drilling fluid into the rock formation, as, at the most, improvements of the structure rather than departures from it. As such they do not avoid infringement of the patent. Temco Electric Motor Co. v. Apco Mfg. Co., 1928, 275 U.S. 319, 328, 48 S.Ct. 170, 72 L.Ed. 298.

Finally, the defendant urges that if claim 5 of the patent in suit is construed to cover the accused bit it is invalid in the light of the Austrian patent No. 1430 of 1900 to von Vangel. We do not agree. The foreign patent to von Vangel appears to be a mere paper patent which was never used and which not only does not disclose any circulation of drilling fluid, an element of vital importance in the art of boring holes in hard rock with diamond drills, but differs in many other respects from the disclosure of the patent in suit.

We conclude that the district court erred in holding that the defendant's accused bit does not infringe claim 5 of the plaintiff's patent.

Since upon reversal the case must go back for a declaration of infringement, injunctive relief and an accounting, we do not now consider the claims for treble damages and attorney's fees, which will be for the district court to deal with upon remand.

Except for its adjudication of the validity of claim 5 of Patent No. 2,953,354, the judgment of the district court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.