**PATTON v. STONE.**
No. 12675.

United States Court of Appeals
Fifth Circuit.
Dec. 21, 1949.

J. Preston Swecker, Washington, D. C., Wayne Somerville, Wichita Falls, Tex., for appellant.

S. Austin Wier, Dallas, Tex., Howard E. Moore, Dallas, Tex., Tom D. Matthews, Dallas, Tex., for appellee.

Before HUTCHESON, WALLER, and RUSSELL, Circuit Judges.

HUTCHESON, Circuit Judge.

On Nov. 28, 1939, in cause No. 34, Civil, Albert C. Stone v. J. F. Patton, the United. States District Court for the Northern District of Texas, a consent decree was entered, adjudging valid and infringed United States Letters Patent No. 2,092,659, relating to termite shields and enjoining [1] the defendant from further infringement.

On June 21, 1948, upon defendant's motion [2] for contempt filed in said cause, a rule issued to defendant to show cause, on November 15, 1948, why he should not be adjudged in contempt.

On November 15th, defendant answered the show cause order, admitting the entry of the consent decree, and that he had installed termite shields at the addresses given. He denied, though, that they were of the character involved in the consent decree, and alleged that the shields he had installed were Tennison termite shields covered by valid patent No. 2,176,598 and not infringements of the Stone patent. He further alleged that Stone was guilty of unfair trade practices in attempting to create a monopoly in unpatented materials.

Thereafter, and on the same date, the motion for contempt coming on to be heard, defendant was adjudged guilty of civil contempt and fined $180.00 and costs.

Appealing from the judgment, defendant is here insisting that the judgment must be reversed because "There is no proof in the record that any shields like the Stone patent had been made by him since the entry of the consent decree".

We agree that the record [3] is as stated by appellant and that the contempt adjudication may not stand.

1. "That the defendant, J. F. Patton, his servants, agents, attorneys, employees and workmen, and all others acting by or under his authority, are hereby enjoined and restrained from making, selling, using, or installing any Termite Shields embodied in and covered by said United States Letters Patent No. 2,092,659, to the full end of the term of said Letters Patent."

2. This motion alleged that Patton had violated the injunction by making, using, selling, and installing, at the addresses given, termite shields embodied in, and covered by, the Stone patent.

3. The defendant, placed on the stand by plaintiff, admitting that during the last two years he had been installing what is known as side wall termite shields, testified that he had bought all of them from Tennison Bros., except about 1000 feet which he had made when he could not get them from Tennison.

Shown a board to which were attached five "strips of metal which we will call termite shields * * * number one at the top on down through No. 5", and asked to point out the shield he had been installing, defendant indicated No. 3.

Asked, "All right. Now do you recognize this shield No. one?" He answered: "No."

Asked, "Is there any primary difference between shield number one and shield number three?", he answered: "Yes",

The district judge, stating that it would be quite unfair for the court to hold the Tennison patent anticipated by Stone's senior patent,—"Both patents were granted by the Patent Office. There may be a struggle between those two parties sometime as to which is really entitled to a patent.",—erroneously concluded, as shown by the emphasized comments in Note 3, supra, and those set out in note four,[4] that Patton had admitted that he made some termite shields in accordance with Stone's patent.

■ It is quite true, as appellee states on page 4 of his brief, "The only issue in a contempt proceeding for violation of an injunction in a patent suit is whether or not the modified devise is the equivalent of the device held to be infringing, and the prior art is not at issue".[5]

■ If, therefore, as the court erroneously found, Patton had admitted that the device made the basis of the contempt proceeding was the same as the device he had been enjoined from making, or if there had been proof identifying the device adjudicated as infringing with the device complained of in the contempt proceeding, a judgment based on that admission or that proof ought not to be set aside.

Here, however, there was no such admission, no such identification. If plaintiff, in querying the defendant about the board with five metal strips, had hoped or intended to identify No. 1 as the device adjudicated in the consent decree as infringing, he wholly failed to do so. Indeed, the only evidence in the record about this No. 1 is the positive evidence of Patton that it is not the same as the No. 3, which he identified as the Tennison shield which he had been selling.

■ In view of another trial we think we should say that if, on a pretrial hearing or otherwise, it develops that the difference between the new and the adjudicated device appears to be substantial and doubtful, and not merely colorable,—if, in short, the real controversy in this case is whether the Ten-

and then proceeded to state the differences.

Defendant's counsel objected to the inquiry about number one, and, stating, "We do not know what number one is.", the court stated: "Look at it. Why waste time. There it is, look. You will find on that book several cases where the Judge looked at it, and says that is not an infringement or it is."

The court: "You made these, number three there, in the last two years only?"

Answer: "No, I have bought the most from Tennison Brothers."

The court: "I say, you made some of them in the last two years?"

Answer: "Yes, sir."

The court: "All right. That is all there is to it." (Emphasis supplied.)

Called on behalf of the defendant, Patton testified that since the injunction was issued against him in 1939, he had not made a similar side wall shield for termites. Asked, "And since that time is it true that all of the shields that you have made—all the shields that you have sold—were Tennison shields?", he answered, "Yes, sir".

"Q. Or shields like them? A. Yes Sir."

"Q. Have you ever made any shields like the Stone patent? A. No, sir."

Then followed testimony by Mr. Tennison to the effect that the general form of his shields was entirely different from that of the Stone patent, and testimony of H. L. Montgomery, who worked for the defendant, that the thousand feet or more termite shields which were not bought from Tennison but manufactured in the shop were made exactly like the Tennison shields, with the exception of the clip on the end.

4. The court in its oral opinion stated, "Now Mr. Patton, who was enjoined by this court from interfering in any way with Stone's patent, confesses here that he did make some of these termite shields such as Stone's patent covered, and that about 1000 feet were made by his tinner, and that he, Patton, ought not to be responsible for that. Well, of course, that plea does not carry very much weight. He is responsible for his employees who act under his orders. This is a confessed violation of this injunction, * * *."

5. Field Body Corp. v. Highland Body Mfg. Co., 6 Cir., 13 F.2d 626; Wadsworth Electric Mfg. Co. v. Westinghouse Electric & Mfg. Co., 6 Cir., 71 F.2d 850; John W. Gottschalk Mfg. Co. v. Springfield Wire & Tinsel Co., 1 Cir., 90 F.2d 468; Mills Novelty Co. v. Monarch Tool & Mfg. Co., 6 Cir., 76 F.2d 653; U. S. Rubber Co. v. General Tire & Rubber Co., 6 Cir., 128 F.2d 104.

nison patent is invalid because anticipated by the Stone patent, and shields made under it are, therefore, infringements of that patent, the matter ought not to be tried out in a contempt proceeding but in a real trial of the issues arising on the two patents.[6]

Further, if notwithstanding there is a real issue, it should be determined to try the matter out in the contempt proceeding, full opportunity ought to be given both plaintiff and defendant to determine whether or not the device complained of in the contempt proceeding is in fact and in law the equivalent of the adjudicated structure.[7]

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

6. California Artificial Stone Pav. Co. v. Molitor, 113 U.S. 609, 5 S.Ct. 618, 28 L. Ed. 1106; Hartford-Empire Co. v. Obear-Nester Glass Co., 8 Cir., 945 F.2d 414.

7. Cf. General Mfg. Corp. v. Gray, D.C., 48 F.2d 602; Wadsworth Electric Mfg. Co. v. Westinghouse Electric & Mfg. Co., 6 Cir., 71 F.2d 850.