**PENN YAN BOATS, INC.,**
**Plaintiff,**

v.

**Donald L. WOLLARD, Defendant.**

**No. 74-243-Civ-WM.**

United States District Court,
S. D. Florida.

Jan. 23, 1975.

Fish & Neave, William K. Kerr, John O. Tramontine and Robert C. Morgan, New York City, Fowler, White, Burnett, Hurley, Banick & Knight, P. A., Michael J. Cappucio, Miami, Fla., for plaintiff.

Amster & Rothstein, Alfred B. Engelberg, New York City, Weiner & Rubin, Irwin J. Weiner, Miami, Fla., for defendant.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

MEHRTENS, District Judge.

### I.  NATURE OF THE ACTION

1.  Plaintiff Penn Yan Boats, Inc. (hereinafter "Penn Yan") brings this action for a declaratory judgment of non-infringement of United States Patent No. 3,469,557 issued on September 30, 1969 to defendant Donald L. Wollard (hereinafter "Wollard").

2.  This Court has jurisdiction over the subject matter of this action under Sections 2201, 2202, 1332 and 1338(a) of Title 28, United States Code (Pre-Trial Stipulation, ¶ 2).

3.  Wollard owns United States Letters Patent No. 3,469,557 entitled "Channel Stern Power Boat" issued in the name of Donald L. Wollard on September 30, 1969 based on an application filed May 1, 1967 (hereinafter "the Wollard patent") (Pre-Trial Stipulation, ¶ 5A).

4.  In a prior and related action entitled "Penn Yan Boats, Inc. v. Sea Lark Boats, Inc., Don's Marine Center, Inc. and Donald L. Wollard, Civil Action No. 71-5-Civ-WM" (hereinafter "the Prior Action"), this Court entered a Final Judgment holding that: Claims 18, 19 and 20 of the Wollard patent were valid; that Penn Yan had infringed the Wollard patent by making, using and selling tunnel boats (hereinafter "the infringing Penn Yan tunnel boat") which infringed Claims 18, 19 and 20 of the Wollard patent.  The structure of the infringing Penn Yan tunnel boat is shown in U. S. Patent No. 3,515,087 issued in the name of Robert Stuart, Penn Yan's

president (hereinafter "the Stuart patent").*

5. On March 30, 1973, the United States Court of Appeals for the Fifth Circuit affirmed, per curiam, this Court's Opinion of May 19, 1972 and adopted the Opinion as its own opinion (479 F.2d 328). On October 9, 1973, the United States Supreme Court denied a Petition for a Writ of Certiorari filed by Penn Yan (414 U.S. 874, 94 S.Ct. 66, 38 L.Ed.2d 115).

6. In April of 1973, and for an interim period, Penn Yan commenced the manufacture and sale of a first modified tunnel boat (hereinafter "the interim Penn Yan tunnel boat") which included a flared area aft of the tunnel.

7. After the summer of 1973, Penn Yan began to manufacture and sell a modified version of the interim Penn Yan tunnel boat (hereinafter "the current Penn Yan tunnel boat") which differed from the interim Penn Yan tunnel boat only in that it had a lateral ridge or shoulder at the location where the flared area commenced, rather than a radius of curvature at that point.

8. Wollard charged Penn Yan with infringement of Claims 18, 19 and 20 of the Wollard patent by reason of Penn Yan's making, using and selling both the interim and current Penn Yan tunnel boats. Penn Yan has denied the charge that either of these boats infringes Claims 18 to 20 of the Wollard patent. The validity of the Wollard patent is not in issue in this action, since such validity was fully adjudicated in the Prior Action.

II. THE ISSUE

9. In the Prior Action, this Court found that the infringing Penn Yan tunnel boats included the following structural features, all of which are clearly illustrated in the Stuart patent and other Penn Yan drawings:

(a) A hull including a bow or forefoot portion, a bottom and a transom;

(b) A tunnel in the hull bottom which extended from an entrance located aft of the bow to an opening in the transom;

(c) Power means including a propeller shaft which was above the bottom and had an axis of rotation which was substantially aligned with the longitudinal axis of the tunnel;

(d) A propeller on the shaft;

(e) A spray plate which formed a rearward continuation of the top of the tunnel aft of the stern; and

(f) The tunnel which was relatively narrow with respect to the bottom so that substantially all of the flow through the tunnel was delivered to the propeller.

The interim and current Penn Yan tunnel boats still include each of the structural features (a) to (f), with the exception of a physically separate spray plate which extends aft of the stern. Also, the interim and current Penn Yan boats have a flared area at the aft end of the tunnel forward of the stern which was not present in the infringing Penn Yan boats.

10. The structural differences between the infringing Penn Yan tunnel boat and the current Penn Yan tunnel boat are not in dispute and are readily apparent from a side-by-side comparison of the partial reproductions of Penn Yan's drawings of these two boats set forth below.

* Throughout these Findings, the Court's Opinion of May 19, 1972 will be referred to by the designations "Original Finding" and "Original Conclusion of Law", followed by the pertinent paragraph number; the Record of the Trial in Civil Action No. 71–5–Civ–WM will be referred to by the letters "OR", followed by the pertinent pages of the Record; the Record of the trial in the instant action held on October 22, 1974 will be referred to by the letter "R", following by the pertinent pages of the Record; plaintiff Penn Yan's exhibits will be referred to as "PX", followed by the exhibit number; and defendant Wollard's exhibits will be referred to by the letters "DX", followed by the exhibit number.

PENN YAN BOATS

1993 Tunnel Configuration

| Material | |
| --- | --- |
| Dwg. No. 1410 | Date 2-14-94 |
| Scale None | Drawn by Stuart |
| Des'd by | |

PENN YAN BOATS

1974 Tunnel Configuration

Subject: Transom Exhaust

Dwg. No. 1403

Scale: NONE

Date: 11-9-73

Drawn by: Lauck

Appr'd by

Keel Line

Transom

84¼" Tunnel Length

38½"

Transom

8"

9"

32°

1½"

5" At Bottom of Tunnel

½"

In the current Penn Yan tunnel boat, the propeller and rudder have been moved to a new position closer to the tunnel entrance or forefoot of the boat. In order to provide clearance for the operation of the rudder in this new position, the tunnel in the infringing Penn Yan boat, which smoothly increased in size and diameter as it extended aft through the transom, has been modified. The current Penn Yan tunnel boat has a flared area at the aft end of the tunnel which starts at a lateral ridge or shoulder. In the current Penn Yan tunnel boat this ridge or shoulder is located six inches forward of the stern-most portion of the hull; and there are side walls which flare outwardly from the ridge or shoulder to the stern. The top wall of the flared area is not flared but rather, is a relatively smooth continuation of the top of the tunnel. The rudder which was attached to and extended beneath the spray plate in the infringing Penn Yan boat, now is attached to and extends beneath the flat top wall of the flared area in the current Penn Yan boat and the physically separate spray plate has been eliminated.

The foregoing analysis of the structural differences between the current Penn Yan tunnel boat and the infringing Penn Yan tunnel boat also applies to the interim Penn Yan tunnel boat since the only material difference between the current and interim Penn Yan boats is that the flared area in the interim boat commences with a radius of curvature, rather than with a lateral ridge or shoulder (R 9–19, 95, 99, 101, 102, 104; PX–1; DX–201, 203, 204).

11. Claim 18 of the Wollard patent is representative of the claims in issue and reads as follows:

A powered boat for high speed shallow draft operation comprising in combination:

(a) Hull means including a bottom provided with a forefoot portion and a transom;

(b) A channel in said bottom and extending from a tunnel entrance rearwardly of said forefoot portion to a rear channel opening in said transom;

(c) Power means on said hull means and comprising a propeller shaft above said bottom and including an axis of rotation substantially aligned with the longitudinal axis of said channel;

(d) A propeller on said shaft;

(e) And means forming a rearward continuation of the top of said channel;

(f) Said channel being relatively narrow with respect to the bottom whereby substantially all of the flow is delivered to the propeller. (Original Finding 19)

12. Wollard contends that: the tunnel in the interim and current Penn Yan tunnel boats effectively ends where the flared area begins; and the flat top wall of the flared area is, in fact, a rearward continuation of the top of the tunnel which is the structural and functional equivalent of the physically separate spray plate in the infringing Penn Yan tunnel boat. Wollard also contends that the "transom" in the infringing and current Penn Yan tunnel boats includes the flared side walls of the flared area aft of the effective end of the tunnel. Accordingly, Wollard asserts that the interim and current Penn Yan boats infringe Claims 18 to 20 of the Wollard patent because they include each and every structural element required by those claims. In any event, it is Wollard's contention that the interim and current Penn Yan tunnel boats include substantially the same structure which functions in substantially the same way to achieve substantially the same result as both the infringing Penn Yan tunnel boat and the boats described and claimed in the Wollard patent and that, therefore, there is infringement.

13. Penn Yan contends that the elimination of the physically separate spray plate from the interim and current Penn Yan tunnel boats results in a boat which does not infringe Claims 18 to 20 of the Wollard patent because it allegedly does not have any ". . . means forming

a rearward continuation of the top of the channel [tunnel] . . ." as required by sub-paragraph (e) of Claim 18 of the Wollard patent. In Penn Yan's view, limitation (e) in Wollard Claim 18 can only be infringed by a structure which extends aft of the transom or sternmost part of the boat hull. Penn Yan further asserts that: should the Court agree with Wollard's contention that the tunnel in the interim and current Penn Yan tunnel boats effectively ends where the flared area begins; and the top wall of the flared area is the structural and functional equivalent of the spray plate in the infringing Penn Yan tunnel boat and is the rearward continuation of the tunnel required by the Wollard claims, there would still be no infringement. This assertion is based on the argument that: the "transom" in the interim and current Penn Yan tunnel boats consists solely of the rearmost transverse surface of the hull; and the tunnels of the interim and current Penn Yan tunnel boats would therefore not extend from a tunnel entrance ". . . to a rear channel opening in said transom . . ." as recited in limitation (b) of Claim 18 of the Wollard patent.

14. It is apparent from the foregoing discussion that resolution of the infringement issue requires a detailed examination of the meaning of the words "tunnel" and "transom" as applied to the boats in question. It also requires the Court to determine, wholly apart from semantics, whether the alleged differences between the interim and current Penn Yan boats and the infringing Penn Yan boats are of such a character that they avoid infringement of Claims 18 to 20 or the Wollard patent.

## III. THE CHARACTERISTICS OF THE INTERIM AND CURRENT PENN YAN TUNNEL BOATS

A. *The Flared Area in the Interim and Current Penn Yan Boats Is Not Part of the Tunnel*

15. Robert Stuart, Penn Yan's president and designer; Robert Hobbs, Wol-lard's expert witness; and William Neilson, Jr., Penn Yan's expert witness, all agree that the purpose of the flared area at the aft end of the tunnel in the interim and current Penn Yan tunnel boats is to provide clearance for the operation of the rudder. A rudder could not operate in the tunnel of the infringing Penn Yan tunnel boat since it would only serve to obstruct the stream of water coming from the tunnel, rather than to direct the stream aft of the boat at a desired angle for positive steering.

16. It is clear from testimony and illustrations by Stuart, as well as the testimony of Wollard's expert Hobbs, that the water flowing through the tunnel in the interim and current Penn Yan tunnel boats separates from the tunnel side walls at the ridge or shoulder which defines the beginning of the flared area in the current Penn Yan tunnel boat or at the radius of curvature which defines the beginning of the flared area in the interim Penn Yan tunnel boat. In normal operation, the water flowing through the tunnel does not flow against, and is not controlled by, the flared side walls of the flared area. That fact is confirmed by actual experience with the interim and current Penn Yan tunnel boats. In the interim Penn Yan tunnel boat, a flutter in the rudder was observed which was eliminated by the addition of the ridge or shoulder. This flutter was apparently caused by an unstable flow of water at the radius of curvature which caused the water to oscillate from side-to-side. The substitution of a sharp shoulder in the current Penn Yan tunnel boat for the radius of curvature in the interim design eliminated that problem by defining a more precise point of separation for the water flowing through the tunnel.

17. Stuart and the experts for both parties also agree that the flared side walls of the flared area do not have any effect upon the basic tunnel drive propulsion system, i.e., the structural and functional relationship between the propeller and the tunnel which the Court, in the Prior Action, characterized as the essence of the Wollard invention. In

that connection, it is noteworthy that although Stuart testified that the most desirable propeller location is as far aft of the tunnel entrance as is possible and practical, the propeller in the current Penn Yan tunnel boat, as compared to the infringing Penn Yan tunnel boat, has actually been moved closer to the tunnel entrance. As a result, the structural relationship between the propeller, tunnel and rudder is substantially identical to the structural relationship of those same elements in the infringing Penn Yan tunnel boat, as can be seen in the bottom plan view drawings reproduced in Finding 10, *supra*. By moving the propeller closer to the tunnel entrance, the propeller is located well ahead of the point where the flared area begins and the relatively close tolerance between the diameter of the tunnel and the diameter of the propeller is preserved. That close tolerance is a significant feature of the Wollard invention as embodied in the infringing Penn Yan tunnel boat since it assures that all of the water flowing through the tunnel is delivered to the propeller.

18. The flared area of the interim and current Penn Yan tunnel boats clearly does not meet the structural or functional definition of a tunnel, as set forth in the Stuart patent, the Wollard patent or as found by the Court in the Prior Action. The Stuart patent (Col. 3, Lines 32–35) defines a tunnel as an inverted U-shape that smoothly increases in size and diameter as it extends aft of the boat. Although Stuart contends that the flared area in the interim and current Penn Yan tunnel boats is part of the tunnel, he acknowledges that the flared area constitutes an abrupt change in the cross-section of that "tunnel". In the Prior Action, the Court found that one of the key characteristics of the tunnel of the Wollard patent was that there was a full flow of water in the tunnel. The flared area of the interim and current Penn Yan tunnel boats does not meet that requirement in that the water flowing through the tunnel does not flow against the flared side walls of the flared area.

19. Although Penn Yan contends that the flared area is part of the tunnel in the interim and current Penn Yan tunnel boats, it has presented no evidence or testimony to support the assertion that the flared area has the structural or functional characteristics of those structures which were characterized as "tunnels" in the Prior Action. To the contrary, the testimony of Mr. Stuart referred to in Findings 15 to 18, *supra*, clearly establishes that the flared area does not have the structural and functional characteristics of a tunnel. Accordingly, the Court finds that the evidence supports the conclusion that the tunnel, in both the interim and current Penn Yan tunnel boats, ends where the flared area *begins* in those boats.

B. *The Interim and Current Penn Yan Tunnel Boats Include a Rearward Continuation of the Top of the Tunnel*

20. The top wall of the flared area, namely, the area aft of the shoulder in the current Penn Yan tunnel boat and after of the radius of curvature in the interim Penn Yan tunnel boat, is a smooth continuation of the top of the tunnel forward of the shoulder or radius. It is not flared as are the side walls of the flared area.

21. The function of the rearward continuation illustrated and claimed in the Wollard patent and embodied in the infringing Penn Yan tunnel boat was to maintain the quality of water coming through the tunnel into the rudder so as to prevent ventilation to the atmosphere. The top wall of the flared area in each of the interim and current Penn Yan tunnel boats, which is a rearward continuation of the top of the tunnel, also performs the same functions. Stuart acknowledges that he did not flare the top wall of the flared area because he feared that it would produce spray which would have been detrimental to the performance of his boats. Stuart

also acknowledges that the top wall of the flared area supports the rudder and rudder vane. Accordingly, by Stuart's own admission, the top wall of the flared area serves the same purposes as did the spray plate in the infringing Penn Yan boat.

22. In view of the facts set forth in Findings 20 and 21, *supra,* the Court concludes that the top wall of the flared area serves as a rearward continuation of the top of the tunnel.

C. *The Transom of the Interim and Current Penn Yan Tunnel Boats Includes the Flared Side Walls of the Flared Area*

23. The Wollard patent does not define the word "transom" although that word is used to designate the rearmost section of the boat hulls depicted in the Wollard patent. The Stuart patent does not define the word "transom". Further, neither party offered a formal definition of that word based on any recognized authority. In fact, Penn Yan's expert, Neilson, stated that he did not know of any formal definition in marine terminology for the word "transom". Although one of Penn Yan's witnesses, Mr. Williamson, rather arbitrarily insisted that "transom" could only be the rearmost transverse surface of a boat hull, the expert witnesses for the parties agree that a transom need not lie in one vertical plane and that it can have an irregular shape. Despite that degree of agreement, the experts disagree as to the structure which constitutes the "transom" in the interim and current Penn Yan tunnel boats.

24. Penn Yan contends that neither the flared side walls nor any other portion of the flared area in the interim and current Penn Yan tunnels boats is part of the "transom". This contention is not based upon any functional analysis with respect to the specific boats in issue but rather is based solely on the opinion of Penn Yan's expert witness, Neilson, as to what he would commonly consider and call a "transom". Such opinion testimony is entitled to little, if any, weight in view of the apparent conflict between Penn Yan's own witnesses, as noted in Finding 23, *supra,* as to what a person skilled in the art would commonly identify as a "transom" but, more importantly, in view of the evasiveness of Neilson's cross-examination testimony. It appears to be Neilson's contention that the flared side walls are not part of the "transom" because they are part of the "tunnel". Such an observation fails to clarify or resolve the issue, particularly since the parties disagree as to the definition of both terms as applied to the boats in issue. Moreover, Neilson's admission that the flared side walls of a flared area aft of the tunnel in at least one sketch of a hypothetical boat drawn by Wollard's counsel could be called a "transom", coupled with his inability to define the "transom" in a second hypothetical sketch (which differed only by degree from the first sketch but was clearly closer to the structure of the interim and current Penn Yan tunnel boats), demonstrates that Penn Yan's position is based on semantics, rather than substance.

25. The testimony of Wollard's expert, Hobbs, with respect to the definition of "transom" as applied to the boats in issue is more credible. Hobbs' definition of "transom" is based upon the functional characteristics of the boats in question. According to Hobbs, a "transom" is a substantially transverse vertical wall across the stern of a planing boat. The "transom" is distinguished from the side walls of a planing boat in that is is functionally approximately at right angles to the center line of a boat and its purpose in a high speed planing boat is to effectively terminate the wet sides of the boat and substitute a dry surface. It is this characteristic of a "transom" which distinguishes it from the steamer or canoe sterns of displacement type hulls which are normally wet at operating speeds and offer high resistance to the water. Hobbs concludes, in accordance with this functional definition, that the "transom" of the interim and current Penn Yan tunnel boats

includes the flared side walls of the flared area because these side walls function in the same manner as the adjacent transverse vertical wall at the stern of the interim and current Penn Yan tunnel boats, i. e., they are dry when the boat is in the normal forward planing mode. The Hobbs definition finds some support in Stuart's testimony in that Stuart acknowledges, as noted in Finding 16, *supra*, that the flared side walls run dry and also acknowledges that those side walls are not part of the bottom of the boat.

26. Additional facts which support the contention that the flared side walls of the flared area are functionally part of the transom in the interim and current Penn Yan tunnel boats are that:

(a) The flared side walls have no function other than to provide space for the operation of the rudder; are not part of the running surface of the boat; and do not contribute to the tunnel drive propulsion concept. Accordingly, there is no apparent difference in the function of the flared side walls and the rearmost transverse surface of the hull which is adjacent to the side walls and which both sides agree is part of the transom (Findings 15, 17, *supra*); and

(b) Stuart admits that the interim Penn Yan tunnel boat is described in the Stuart patent (FIGS. 12, 13 and Col. 5, Lines 42–75). The Stuart patent makes it clear that the flared area is nothing more than a stern extension of the infringing Penn Yan boat which acts as a housing for the rudder. If the transom of the infringing Penn Yan tunnel boat was extended aft so that it terminated at the end of the spray plate (and clearance was provided for the operation of the rudder), the resulting boat would be the interim and current Penn Yan tunnel boats. Penn Yan has achieved the identical effect by moving the rudder and propeller forward, rather than extending the transom aft. But in either case, none of the structure aft of the commencement of the flared area, with the exception of the rearward continuation of the top of the tunnel, has any function other than to complete the hull, i. e., to provide structure which keeps water out of the back of the boat.

27. In view of the facts set forth in Findings 23 to 26, *supra*, the Court concludes that the "transom" in the interim and current Penn Yan tunnel boats includes the flared side walls of the flared area, as well as the transverse vertical rear surface of those boats. However, as will be pointed out in more detail hereinafter, in view of the overall structural and functional characteristics of the interim and current Penn Yan tunnel boats, a precise definition of the term "transom" is not critical to the ultimate resolution of the infringement controversy since it has no effect on the manner in which these boats operate.

D. *The Interim and Current Penn Yan Tunnel Boats Are Equivalent to the Infringing Penn Yan Tunnel Boat*

28. Stuart acknowledges that the embodiment illustrated in FIGS. 12 and 13 of the Stuart patent and described at Column 5, Lines 43–75 of the Stuart patent is identical to the interim Penn Yan tunnel boat. The Stuart patent and Stuart's testimony make it clear that the flared area constitutes nothing more than an elaborate rudder housing which serves the same essential purposes as the spray plate in the infringing Penn Yan tunnel boat (Findings 20–22, 26, *supra*).

29. The original illustrations in Penn Yan's advertising pertaining to the infringing Penn Yan tunnel boat and the illustrations thereafter employed in connection with the interim and current Penn Yan tunnel boats, both of which are intended to describe the manner in

which the boats function and the structure which contributes to those functions, are substantially identical. Indeed, the illustrations currently being used by Penn Yan indicate that the tunnel effectively ends where the flared area commences, i. e., the tunnel ends aft of the propeller and forward of the rudder. The only discernible difference in the current illustrations for the current Penn Yan tunnel boat as compared to the illustrations used with the infringing Penn Yan tunnel boat is that the stern of the boat has been extended aft so as to enclose the formerly vacant space above the spray plate. The advertising explanations and illustrations used by Penn Yan are consistent with the description of the function and purpose of the flared area described in the Stuart patent and constitute a clear admission that the interim and current Penn Yan tunnel boats perform in substantially the same way to achieve the same result as the infringing Penn Yan tunnel boat.

30. As pointed out in Finding 9, *supra,* the interim and current Penn Yan tunnel boats include all of the structural elements which were present in the infringing Penn Yan boat, with the exception of a physically separate spray plate which functioned as a rearward continuation of the top of the tunnel. It is also clear from Findings 20–22, *supra,* that the top wall of the flared area is not flared but rather is a rearward continuation of the top of the tunnel which performs the same functions as the spray plate. Finding 17, *supra,* establishes that the flared side walls of the flared area have no effect on the basic tunnel propulsion concept. Accordingly, in summary, the interim and current Penn Yan tunnel boats include all of the structural elements which were present in the infringing Penn Yan tunnel boat; and these elements perform in a similar manner to achieve a similar result as that achieved by the infringing Penn Yan tunnel boat. Moreover, the interim and current Penn Yan tunnel boats do not include any structural elements

which have a function with respect to the tunnel drive propulsion concept which were not also present in the infringing Penn Yan tunnel boat. Thus, the interim and current Penn Yan tunnel boats are equivalent to the infringing Penn Yan tunnel boats.

IV. THE INTERIM AND CURRENT PENN YAN TUNNEL DRIVE BOATS INFRINGE THE WOLLARD PATENT

31. The Court has found that the tunnel in the interim and current Penn Yan tunnel boats ends where the flared area begins (Finding 19, *supra*); that the flat top wall of the flared area is a rearward continuation of the top of the tunnel (Finding 22, *supra*); and that the transom includes the flared side walls of the flared area, as well as the rearmost transverse surface of the hull (Finding 27, *supra*). Accordingly, the interim and current Penn Yan tunnel boats literally infringe Claim 18 of the Wollard patent since they clearly include:

(a) Hull means including a bottom provided with a forefoot portion and a transom;

(b) A channel in said bottom and extending from a tunnel entrance rearwardly of said forefoot portion to a rear channel opening in said transom;

(c) Power means on said hull means and comprising a propeller shaft above said bottom and including an axis of rotation substantially aligned with the longitudinal axis of said channel;

(d) A propeller on said shaft;

(e) Means forming a rearward continution of the top of said channel; and

(f) Said channel being relatively narrow with respect to the bottom whereby substantially all of the flow is delivered to the propeller.

Even if the Court were to adopt a definition of the term "transom" which excluded the flared side walls of the flared

area and included only the rearmost transverse surface of the interim and current Penn Yan tunnel boats, those boats would still be a substantially literal infringement of Claims 18 to 20 of the Wollard patent. The interim and current Penn Yan tunnel boats would still include a tunnel in the hull bottom which extended from an entrance located aft of the bow to an opening in the transom as required by limitation (b) of Claim 18 of the Wollard patent. The Court can perceive of no reason why the "opening" cannot have depth and include the unencumbered space between the end of the tunnel (at the commencement of the flared area) and the opening in the sternmost portion of the hull which, beyond dispute, is the transom. Penn Yan's attempt to read limitation (b) of Claim 18 of the Wollard patent as requiring a tunnel which extends through the transom as opposed to a tunnel which is open to the transom is not warranted either by the language of the claim, or the teachings of the Wollard patent. The Wollard patent does not indicate that there is any critical relationship between the location of the transom and the end of the tunnel. It merely requires that all of the water flow through an opening in the transom. The interim and current Penn Yan tunnel boats clearly include all of the structure required by the claims of the Wollard patent; and that structure performs in substantially the same way to achieve substantially the same results as described and claimed in the Wollard patent, irrespective of what a person skilled in the art elects to call the "transom" in those boats.

32. Penn Yan has not presented any testimony or other evidence which would rebut the Court's finding that the interim and current Penn Yan tunnel boats are equivalent to the infringing Penn Yan tunnel boats or that they operate in the same manner to achieve the same results as described and claimed in the Wollard patent (Findings 28–30, *supra*). To the contrary, Stuart's testimony with respect to the structure and function of the flared area, the description of the flared area contained in Stuart's own patent and the Penn Yan advertising illustrations corroborate the essential testimony of Wollard's expert Hobbs at every key point. Nevertheless, Penn Yan asserts that the interim and current Penn Yan tunnel boats do not infringe Claim 18 of the Wollard patent because the limitation in sub-paragraph (e) of that claim which requires the presence of ". . . means forming a rearward continuation of the top of said channel . . ." must be non-literally construed as requiring structure, such as a plate, *aft of the transom* even though the emphasized words do not appear in the claim. That contention is based upon alleged estoppels arising out of the Prior Action, the file history of the Wollard patent and the prior art. The Court finds that this contention is not supported by the evidence.

33. In the Prior Action, the Court held that the essence of the Wollard invention resided in a combination of structural elements which resulted in the delivery of a full flow of water of suitable quality through a tunnel to a propeller which was aligned with the flow of water in the tunnel. The Court specifically found that the structural elements which accomplish that purpose and which were recited in the claims of the Wollard patent included:

(a) A tunnel in the bottom of the boat which extended from a tunnel entrance commencing at a point aft of the forefoot portion of the boat and extending rearwardly to an opening in the transom;

(b) A propeller having an axis of rotation which was substantially aligned with the longitudinal axis of the tunnel; and

(c) A relatively close tolerance between the diameter of the tunnel and the diameter of the propeller so that substantially all of the flow of water through the tunnel is delivered to the propeller.

The Court also noted that the preferred outboard embodiment described in the Wollard patent included a cavitation or spray plate which functioned as a rearward continuation of the top of the tunnel in order to ensure a full flow of water to a propeller located aft of the transom. Penn Yan apparently relies on this finding as establishing an estoppel which requires this Court to now find that the rearward continuation of the top of the tunnel must be located aft of the transom, even though those words do not appear in Claim 18 of the Wollard patent. No such estoppel exists or was intended in the Court's ruling in the Prior Action. Indeed, the assertion that the rearward continuation of the top of the tunnel must be aft of the transom is inconsistent with the Court's Original Finding that Claim 18 of the Wollard patent is not limited to the preferred outboard and out-drive embodiments disclosed in the Wollard patent, i. e., to structures in which a propeller is located aft of the transom (Original Findings 26, 27).

34. The fact that the Court identified the rearward continuation of the top of the tunnel as being aft of the transom in the specific Penn Yan tunnel boats considered in the Prior Action cannot properly be taken as a finding by the Court that the rearward continuation must, of necessity, be located aft of the transom in order to infringe Claim 18 of the Wollard patent. The Court was not required to, and accordingly did not, rule on the scope of that limitation during the original trial since all of the Penn Yan tunnel boats in issue had rearward continuations which were aft of the transom. Indeed, the only instance in which any question arose concerning the location of the rearward continuation of the tunnel was with respect to Penn Yan's assertion that Claims 18 to 20 of the Wollard patent were anticipated by a publication entitled *Sandpiper, A 22' Shoal Draft Runabout.* The Sandpiper had a smooth-walled, continuous tunnel and did not include any flared area. Ironically, and contrary to its present position, Penn Yan's expert witness then asserted that the means forming a rearward continuation of the top of the tunnel required by Claim 18 of the Wollard patent was located forward of the transom in the Sandpiper. While the Court held that the Sandpiper did not disclose means forming a rearward continuation of the top of the tunnel aft of the transom, that finding cannot be taken as establishing that Claim 18 of the Wollard patent would be invalid unless read to include such a limitation since the Court also found that the Sandpiper did not include *any* of the key structural limitations of Wollard Claim 18, such as:

(a) A propeller shaft located above the bottom of the boat;

(b) A propeller shaft having an axis of rotation substantially aligned with the tunnel;

(c) A propeller located above the bottom of the boat; and

(d) A propeller which was nearly the diameter of the tunnel so that substantially all of the flow through the tunnel would be delivered to the propeller.

Summarizing its conclusions with respect to the Sandpiper, the Court stated:

"In short, Sandpiper does not include the structural limitations set forth in claims 18 to 20 of the Wollard patent, nor does this article disclose or suggest a structure which would function in the same manner as taught in the Wollard patent to achieve the same result."

In view of the foregoing, there is no support for an assertion that an estoppel with respect to the construction of Claim 18 arises out of the Prior Action (Original Finding 30).

35. In the Prior Action, the Court held that its review of the Wollard specification and file history did not reveal the existence of any file wrapper estoppel which would require that the Wollard claims be read narrowly. On the present issue, there is nothing in that history which would require that Wol-

lard Claims 18 to 20 be limited to a rearward continuation *aft of the transom* despite the absence of those words from the claim. To the contrary, original Claims 6 and 16 of the Wollard patent application required the presence of ". . . a cavitation plate . . ." a structural limitation which, if present in the claims actually issued by the Patent Office would have clearly limited Wollard to a structure aft of the transom. These claims were broadened by subsequent amendments during prosecution so that a plate, per se, is no longer recited in Claims 18 to 20 of the Wollard patent. The Court notes that Claims 18 to 20 of the Wollard patent are specifically broader in this respect than Claims 1 to 17 of the Wollard patent which still require the presence of ". . . plate means . . .". Moreover, it is clear that no prior art was cited by the Patent Office during the prosecution of the Wollard patent application which would require the Court to limit the claims of the Wollard patent to a rearward continuation located aft of the transom. The only discussion appearing in the file history with respect to the ". . . rearward continuation . . ." limitation was in response to the Patent Examiner's rejection of December 18, 1968 in which the Patent Examiner, relying on the prior art Kickhaefer patent in combination with the Stocking patent, expressed the belief that it would be obvious to place an outboard motor with a cavitation plate on the transom so that the plate would be a continuation of the top wall of the tunnel. In response to that rejection, Wollard's counsel noted (PX–29, p. 64) that the cavitation plate in Kickhaefer was aligned with the bottom of the boat and that there was no suggestion in the reference of having a rearward continuation of the tunnel. There is nothing in this exchange of arguments between Wollard's counsel and the Patent Office which bears at all on the question of whether or not the rearward continuation of the top of the tunnel could be located forward rather than aft of the transom. Accordingly, there is no file wrapper estoppel which would now require the Court to read a limitation into the claims which is not there (Original Finding 28).

36. Penn Yan relies on Criqui U. S. Patent No. 1,108,340, issued August 25, 1914; Loetzer U. S. Patent No. 1,007,583; a boat known as the "Miss Ruth" allegedly built by Everett Williamson of Riviera, Texas in July, 1960; and a second Williamson boat known as the "Locktender No. 4" allegedly built in 1965, as prior art to limit the scope of the Wollard patent to a rearward continuation located aft of the sternmost part of the boat. None of this alleged prior art discloses or suggests either a tunnel boat having a flared area remotely similar to the flared areas in the interim and current Penn Yan tunnel boats or any structure similar to the spray or cavitation plate aft of the transom in the infringing Penn Yan tunnel boat. Thus, the prior art cited by Penn Yan fails to establish that there is any art recognized distinction or non-equivalence between a rearward continuation located forward of the transom and a rearward continuation located aft of the transom. Accordingly, the cited prior art fails to supply any reason why the Court should narrowly and non-literally construe the limitation in Claim 18 of the Wollard patent which requires ". . . means forming a rearward continuation of the top of said channel . . .".

37. It appears that Penn Yan is relying on the Criqui and Loetzer patents and the Williamson boats in an attempt to establish that limitations set forth in Claim 18 of the Wollard patent, other than the limitation with respect to the rearward continuation, are taught by this prior art and therefore cannot form the basis for an assertion that Claim 18 of the Wollard patent is valid. The scope of those claim limitations is clearly not in issue since they are directed to structural features which were present in the infringing Penn Yan tunnel boats and have not been changed. Such arguments constitute an attack on the Court's findings in the Prior Action

with respect to the essence of the invention, the scope and content of the prior art, and the differences between the prior art and the claimed invention; and such attack is clearly barred from consideration at this stage of the controversy between these parties under the doctrine of collateral estoppel (see CONCLUSION OF LAW V, *infra*). However, even if the doctrine of collateral estoppel did not apply, Penn Yan's arguments with respect to the prior art could not succeed because of the heretofore noted failure (Finding 36, *supra*) of that art to disclose or suggest any rearward continuation of the top of the tunnel, either forward or aft of the transom.

38. The prior art, in any event, falls short of establishing that the combination of elements set forth in Claim 18 of the Wollard patent is anticipated or obvious or must be limited to a rearward continuation aft of the transom. An analysis of the prior art reveals the following:

(a) The Criqui patent is directed to a tunnel insert for a barge or canal boat which is not a high speed or planing boat. The patent does not disclose a boat having a forefoot portion; a rearward continuation either forward or aft of the transom; or a tunnel which is relatively narrow with respect to the bottom so that substantially all of the flow through the tunnel is delivered to the propeller. It is noteworthy that the Criqui patent preceded the Wollard invention by more than fifty (50) years, a fact which casts much doubt on the assertion that the tunnel drive propulsion concept would have been obvious to a person of ordinary skill in the art from reading the Criqui patent.

(b) The Loetzer patent is also directed to a displacement hull, rather than a high speed planing boat and preceded the Wollard invention by almost sixty (60) years. Loetzer does not disclose or suggest a tunnel which extends through the transom of a boat but rather discloses a tunnel which is entirely in the bottom of the boat and which is sealed at its rear end when the boat is in motion. In Loetzer, there is no rearward continuation of the top of the tunnel, either forward or aft of the transom; and there is no disclosure or suggestion that the tunnel should be relatively narrow with respect to the bottom so that all of the water flowing through the tunnel is delivered to the propeller.

(c) The Williamson "Miss Ruth" boat allegedly built in 1960 is evidenced solely by photographs. Penn Yan failed to produce any drawings, sales documents, delivery documents, or any other materials which would establish either the structural details of the "Miss Ruth" or the fact that the "Miss Ruth" was a completed invention which was in public use or on sale prior to the Wollard invention, save for the oral testimony of Mr. Williamson. The photographs do not establish where the tunnel started in the "Miss Ruth"; are uncertain as to the location of the axis of rotation of the propeller shaft and propeller; and do not indicate that the boat was so designed that substantially all of the flow of water through the tunnel was delivered to the propeller. In short, there is insufficient evidence in the record to establish that the "Miss Ruth" is proper prior art and, even if it were, to establish that it included the structural elements required by Claim 18 of the Wollard patent. Moreover, the "Miss Ruth" certainly did not include a rearward continuation of the top of the tunnel, either forward or aft of the transom.

(d) The Williamson "Locktender No. 4" is also evidenced merely by

photographs although there are contractual documents indicating that the boat was actually sold to the Army in 1965. The "Llocktender No. 4", however, is no more pertinent than the "Sandpiper" boat which was considered by the Court in the Prior Action. The hub of the propeller in the "Locktender No. 4" is located below the bottom of the boat so that more than half of the propeller is not located in the tunnel. Accordingly, the "Locktender No. 4" does not disclose or suggest a tunnel boat having an axis of rotation substantially aligned with the longitudinal axis of the tunnel or an arrangement whereby substantially all of the flow through the tunnel is delivered to the propeller as required by Claim 18 of the Wollard patent. It also does not disclose or suggest a rearward continuation of the top of the tunnel either forward or aft of the transom.

39. The Wollard patent does not specifically describe or illustrate a tunnel drive boat having a rearward continuation of the top of the tunnel forward of the transom. It does, however, clearly describe the structural and functional requirements of the rearward continuation (Column 5, Lines 5–18, 46–53). Moreover, the Wollard patent does not indicate that there is a required functional relationship between the rearward continuation and the transom which would lead anyone of ordinary skill in the art to conclude that the rearward continuation must be located aft of the transom. Accordingly, the Court can perceive of no reason why the disputed limitation in Claim 18 of the Wollard patent should not be read in its normal and natural sense. When so read, it clearly reads on the flat top wall of the flared area in the interim and current Penn Yan tunnel boats which has essentially the same structure and is intended to perform the same functions as the rearward continuation described in the Wollard patent. The claim construction asserted by Penn Yan would permit Penn Yan to avoid infringement by merely extending the transom and side walls of the infringing Penn Yan boat rearwardly so as to enclose the space above and around the spray plate in that boat. That physical enclosure has no structural or functional significance with respect to the tunnel drive propulsion concept and cannot, therefore, serve as the basis for avoiding infringement (Finding 29, supra).

40. The Court finds, as it did in the Prior Action, that a literal interpretation of Claims 18 to 20 of the Wollard patent is justified by the scope of the invention described in the Wollard patent. When so read, in accordance with their clear and unambiguous meaning, the claims are clearly infringed by the interim and current Penn Yan tunnel boats. Those boats possess all of the structural elements recited in the Wollard claims; and those structural elements perform in the same way to achieve the same result as taught and claimed in the Wollard patent (Findings 28–30, supra).

## CONCLUSIONS OF LAW

■■ I. If two devices do the same work in substantially the same way and accomplish substantially the same result, they are the same even though they differ in name, form or shape. Graver Tank Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Laitram Corp. v. Deep South Packing Co., Inc., 443 F.2d 928 (5th Cir. 1971). The interim and current Penn Yan tunnel boats include all of the structural elements which were present in the infringing Penn Yan tunnel boats and those structural elements work in substantially the same way to accomplish substantially the same result as was achieved in the infringing Penn Yan tunnel boat. Accordingly, the interim and current Penn Yan tunnel boats are equivalent to the infringing Penn Yan tunnel boat.

II. Although the claims of the Wollard patent should be read in the light of the disclosure of the specification and drawings of such patent, this does not restrict the invention to the precise structure disclosed in the preferred embodiments of the Wollard patent, but rather to the real invention as found in the specification and drawings which may be claimed as broadly as the prior art allows. Cameron Iron Works, Inc. v. Stekoll, 242 F.2d 17 (5th Cir. 1957); Del Francia v. Stanthony Corporation, 278 F.2d 745 (5th Cir. 1960); Up-Right, Inc. v. Safeway Products, Inc., 315 F.2d 23 (5th Cir. 1963); Sterner Lighting, Inc. v. Allied Electrical Supply, Inc., 431 F.2d 539 (5th Cir. 1970); Marvin Glass & Associates v. Sears, Roebuck and Company, 448 F.2d 60 (5th Cir. 1971). Thus, "means" expression in the Wollard patent claims covers the corresponding structure described in the patent specification and equivalents thereof even though those equivalents are not specifically described in the patent. Del Francia v. Stanthony Corporation, 278 F.2d 745 (5th Cir. 1960); Foster Cathead Company v. Hasha, 382 F.2d 761 (5th Cir. 1967), cert. denied 390 U.S. 906, 88 S.Ct. 819, 19 L.Ed.2d 872 (1968). It is a well-settled rule of claim construction that a broad claim will not be construed to contain limitations expressed in a more narrow claim. Cameron Iron Works, Inc. v. Stekoll, *supra.* Finally, Claims 18, 19 and 20 of the Wollard patent are entitled to be read in their normal and natural sense in accordance with their unambiguous language. Graver Tank Mfg. Co. v. Linde Air Products Co., *supra*; Williams Bit and Tool Co. v. Christensen Diamond Products Co., 399 F.2d 628 (5th Cir. 1968); *Cameron Iron Works, Inc., supra.* The specific application of the foregoing rules of claim construction to the current controversy, in the light of the Court's factual findings, establishes that there is no basis for Penn Yan's assertion that the ". . . means forming a rearward continuation . . ." required by Claim 18 of the Wollard patent must be narrowly and non-literally construed so as to cover only such means as extend aft of the transom. The limitation set forth in Claim 18 covers any means forming a rearward continuation of the top of the tunnel, whether located forward or aft of the transom, which functions in the manner described in the Wollard patent for the purposes described in the Wollard patent.

III. There was no finding by the Court in the Prior Action, and no argument presented by Wollard in the Prior Action, which justifies the conclusion that Wollard is estopped from asserting or that the Court is precluded from finding that Claim 18 of the Wollard patent covers means forming a rearward continuation which is located forward of the transom. The rearward continuation limitation of Claim 18 was not the material and controlling distinction between the claims of the Wollard patent and the prior art on which the Court's finding of validity in the Prior Action was based. E–I–M Company v. Philadelphia Gear Works, 223 F.2d 36 (5th Cir. 1955).

IV. The only issue in this proceeding is whether or not the interim and current Penn Yan tunnel boats are the equivalent of the infringing Penn Yan tunnel boat in relation to the Wollard patent in suit. The validity of the Wollard patent is not in issue, having been adjudicated in the Prior Action. Patton v. Stone, 178 F.2d 515 (5th Cir. 1949); Field Body Corp. v. Highland Body Mfg. Co., 13 F.2d 626 (6th Cir. 1926); Wadsworth Electric Mfg. Co. v. Westinghouse Electric & Mfg. Co., 71 F.2d 850 (6th Cir. 1934); John W. Gottschalk Mfg. Co. v. Springfield Wire and Tinsel Co., 90 F.2d 468 (1st Cir. 1937); Mills Novelty Co. v. Monarch Tool & Mfg. Co., 76 F. 2d 653 (6th Cir. 1935); and U. S. Rubber Co. v. General Tire & Rubber Co., 128 F.2d 104 (6th Cir. 1942).

V. Penn Yan is entitled to challenge the scope of the Wollard claims previously held valid and to present relevant evidence with respect to that limited issue. U. S. Industries, Inc. v. Otis

Engineering Corporation, 277 F.2d 282 (5th Cir. 1960). This does not mean, however, that Penn Yan is entitled to: a *de novo* review of prior art not previously considered; or a re-interpretation of the claims for the purpose of attempting to redefine the essence of the Wollard invention in a manner which is inconsistent with the determination made by the Court in the Prior Action. Field Body Corporation v. Highland Body Mfg. Co., *supra*; Hirs v. Detroit Filter Corporation, 424 F.2d 1040 (6th Cir. 1970); and *Cf.* Chemical Cleaning, Inc. v. Dow Chemical Company, 379 F.2d 294 (5th Cir. 1967), cert. denied 402 U.S. 945, 91 S.Ct. 1621, 29 L.Ed.2d 113 (1971). Rather, Penn Yan is limited to the presentation of evidence which would establish that Penn Yan's interim and current tunnel boats are not equivalent to the infringing Penn Yan tunnel boat. E-I-M Company v. Philadelphia Gear Works, 223 F.2d 36, 41 (5th Cir. 1955). The infringing Penn Yan tunnel boats and the interim and current Penn Yan tunnel boats are all high speed planing boats having: tunnels commencing aft of a forefoot portion and extending through an opening in the transom; propellers revolving on propeller shafts which are substantially aligned with the longitudinal axis of the tunnel; and propellers which are nearly the same diameter as the cross-section of the tunnel so that all of the flow through the tunnel is delivered to the propeller. The scope of the limitations in the Wollard claims directed to those common structural features cannot possibly be in issue since the Prior Action conclusively established that those limitations were infringed by Penn Yan. Accordingly, to the extent that Penn Yan now asserts that those particular features are old and cannot form the basis for a patentable invention, such assertion and argument are barred by collateral estoppel. Penn Yan is precluded from attacking the Court's findings in the Prior Action with respect to the scope and content of the prior art and the differences between the prior art and the claimed invention;

and such attack has no bearing on the question of whether the changes made in the interim and current Penn Yan tunnel boats avoid infringement.

VI. None of the prior art relied on by Penn Yan bears on the question of whether the ". . . means forming a rearward continuation . . ." recited in Claim 18 of the Wollard patent must be limited to a means located aft of the transom. The Court has found, as a matter of fact, that none of the art relied upon discloses any means forming a rearward continuation of the top of a tunnel, either forward or aft of a transom. Accordingly, the prior art has no controlling effect over the scope to be accorded to that limitation in the Wollard claim. Further, with respect to Penn Yan's evidence of prior art, the Court finds that the "Miss Ruth" allegedly built by Everett Williamson in 1960, would not qualify as prior art in any event since clear and convincing evidence was not presented which establishes its structure beyond a reasonable doubt or that otherwise satisfies the prior use or sale requirements of 35 U.S.C. § 102. Inglett and Company, Inc. v. Everglades Fertilizer Company, Inc., 255 F.2d 342 (5th Cir. 1958); Metal Arts Company v. Fuller Company, 389 F.2d 319 (5th Cir. 1958); Soundscriber v. United States, 360 F.2d 954 (Ct.Cl. 1966); Hunt Industries, Inc. v. Fibra Boats, Inc., 299 F.Supp. 1145 (S.D.Fla. 1969).

VII. Claims 18, 19 and 20 of the Wollard patent are infringed by the interim and current Penn Yan tunnel boats when those claims are read in their normal and natural sense in accordance with their unambiguous language and applying the relevant rules of claim construction. The interim and current Penn Yan tunnel boats include all of the structural elements recited in Claims 18 to 20 of the Wollard patent; and those structural elements work in substantially the same way and accomplish substantially the same result as disclosed and claimed in the Wollard patent.